**Brian SPENCER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

June 13, 1973.

Richard Allen Paul and Paul R. Steyermark, Asst. Public Defenders, Wilmington, for defendant below, appellant.

Edward C. Pankowski, Jr., Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before WOLCOTT, Chief Justice, and CAREY and HERRMANN, Associate Justices.

HERRMANN, Justice:

This appeal from a conviction of rape is based upon three grounds:

I.

The defendant complains that the State was permitted by the Court to cross-examine the prosecuting witness upon the issue of consent.

Upon direct examination of the prosecuting witness by the State's attorney, the following occurred:

"Q  Marcella, did you consent to what Brian Spencer did to you?

"A  I don't understand.

"Q Did you want to do what Brian was doing with you?

"A No.

"Q Had you ever done anything like that before?

"A No.

"Q Did he force you to do it?

"A No.

"Q Do you understand what I mean when I asked you did he force you to do it?

Defense Attorney: "Your Honor, he's cross-examining his own witness. The witness has answered the question.

"THE COURT: * * * we have got a very young child here who knows very little about these matters and I am going to permit, within reason, the Attorney General to cross-examine this witness.

Defense Attorney: "Yes, sir. I have a continuing objection to this.

"THE COURT: All right. Now, Mr. Attorney General, I'm going to permit you to cross-examine her within reason.

State's Attorney:

"Q Did you understand, Marcella, what I mean when I asked you did he force you to do it?

"A No.

"Q Okay. Did you want to do what he did to you?

"A No.

"Q And why did you do it?

"A I don't understand.

"Q If Brian had simply met you in the street and asked you if you would do that with him, would you have done it with him?

"A No."

At the time of the trial, the prosecuting witness was about 12 years old. In view of her age, we find no reversible error in the course followed by the Trial Judge.

II.

The defendant contends that prejudicial error occurred when a character witness, called by the defendant for good-reputation testimony, was asked by the State's attorney about a prior arrest on a charge of rape. The following transpired at this phase of the trial:

*On Direct Examination*

"Q Do you know people in the scouting community that know Brian?

"A Yes, yes. He went to camp with us. The counselors, people who work with us—Brian [the defendant] is well known.

"Q All right. And amongst those people do you know Brian's reputation for peace and good order?

"A Yes, yes. Brian is known as a good, obedient boy. He's—he's—I have never heard him use dirty language. His attitude toward other people is good. He's a friendly boy, quiet boy. I would believe him. I would believe him. If he gave me his word, I would believe him."

* * * * * *

*On Cross-Examination*

"Q How long have you worked in this neighborhood?

"A I think this is my sixth year.

"Q Did you know or had you heard that Brian Spencer was arrested and charged with the rape of a 14-year-old girl which occurred on the 13th of November, 1970?

"A He was falsely accused at one time of it and proved innocent, I believe.

"Q How was he proved innocent?

"A I believe the girl contradicted her statement, later told the truth.

"Q And you did know that he was arrested for rape in 1970?

"A Yes. This is not uncommon. Girls very often charge this, especially if they are pregnant.

"Q And you knew he was arrested for rape in 1970?

"A Yes."

The State's attorney pressed the same line of questioning upon a witness who had been called by the State as an eye witness. The following transpired on direct examination:

State's Attorney:

"Q Did you know whether he had ever been in any similar trouble before?

"A Yes.

"Q You knew that he had?

"A Yeah.

"Q Is that the reason you were going to pull him out of the alleyway?

"A Yes."

We find no reversible error in this facet of the case. Cross-examination of a character witness, relative to his awareness of the defendant's previous arrest for a similar offense, has been generally approved. See Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); Steigler v. State, Del.Supr., 277 A.2d 662 (1971); Anno: 47 A.L.R.2d 1258, 1298. Moreover, the witness' answers to the instant questions were so exculpatory, we think, as to effectively counterbalance any harm arising from the questions themselves.

Quite another matter, however, were similar questions on direct examination of the eyewitness called by the State. Generally, evidence of prior arrest of the defendant is improper and inadmissible. State v. Boyd, 8 Terry 370, 91 A.2d 471 (1952); Freeman v. State, Del.Supr., 242 A.2d 311 (1968). The questions should not have been asked; and when asked they should have been stricken by the Trial Court (before answer if possible) with ap-propriate instructions to the jury. There was error in this facet of the trial.

We have concluded, however, that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The previous arrest had been the subject of the earlier questions to, and exculpatory answers of, the character witness. The jury thus heard nothing it had not heard before in this regard.

### III.

The defendant objected to the admission in evidence of a photograph purporting to show blood stains. There had been no tests to establish the stains as blood. The photograph was labeled by the Court as "apparently blood" and the Trial Judge cautioned the jury to regard it as such. The purpose of the photograph was to depict the scene of the offense.

We find no reversible error in this phase of the case.

\* \* \* \* \* \*

Affirmed.